UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| M.Y., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:21-cv-00530-CDP |
| | ) | |
| DON COPELAND, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Bernard Hooks[1] for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as

---

[1] This case is purportedly brought by three separate plaintiffs. However, Mr. Hooks is the only one who has signed the complaint and the motion for leave to proceed in forma pauperis. The Court will therefore refer to him as the sole plaintiff. Further, as discussed below, Maggie Cotton and M.Y., the other individuals listed as plaintiffs, will be stricken from this action.

true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who brings this civil action on behalf of himself, as well as Maggie Cotton and M.Y. He names six defendants: (1) Don Copeland, President of Fisher & Co. Real Estate Services; (2) Yalima Holdings LLC; (3) the St. Louis County Police Department; (4) the St. Louis County Government; (5) Julia M. Lutovich; and (6) Solid Real Estate Group LLC. (Docket No. 1 at 2-3). Plaintiff asserts that this Court has federal question subject

2

matter jurisdiction because of an "Executive Order regarding [the] pandemic" that provided a "moratorium [on the] adverse possession laws for the State of Missouri." (Docket No. 1 at 4). Further, he states that this case involves his civil rights, his Missouri squatter's rights, maritime and admiralty laws, and "the rights of the Native[] Americans and Moorish American aboriginal rights to land and possession of land."

The complaint concerns plaintiff's physical removal from the property at 1470 Villa Lago Drive in St. Louis Missouri. According to plaintiff, the "defendants committed a criminal offense by violating [his] civil rights and engaging in a civil matter" when a police sergeant ordered "his officers on duty to assist a landowner in removing [him] and [his] family as squatters…out of the land owner[']s property." (Docket No. 1 at 6). Plaintiff states that this occurred on April 26, 2021 at 9:30 a.m., and that the St. Louis County Police sergeant gave "6 police officer[s] the order to enter the premises that [he] and [his] family were currently in adverse possession with drawn guns."

Plaintiff contends that the actions of the St. Louis County Police Department were taken "in favor of the landowner who was aware of [his] adverse possession of 1470 Villa Lago." He also states that the police assisted the landowner by "drilling holes in locks in order to regain possession." Plaintiff further alleges that his fourteen year-old daughter was run out of the property "with guns," and that his family was left on the streets without their personal property.

As a result of this incident, plaintiff seeks $25 million for physical damage to the property and for mental harm caused by the violation of his "civil and human rights." (Docket No. 1 at 5).

### Discussion

Plaintiff alleges that his civil rights were violated when he was removed from property over which he claims he had "adverse possession." Because plaintiff is proceeding in forma pauperis, the Court has reviewed his complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court must dismiss this action without prejudice.

### A.  Construction of Complaint as Arising Under 42 U.S.C. § 1983

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). As such, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question cases and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); and *McLaurin v. Prater*,

30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In this case, while plaintiff has filled out the section of the form complaint alleging diversity of citizenship, he has not shown that diversity exists among the parties. "Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interest and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001).

With regard to diversity of the parties, "[c]omplete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). For purposes of diversity, state citizenship requires an individual's physical presence in the state coupled with an indefinite intention there to remain. *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986).

As to the jurisdictional amount, plaintiff has alleged $25 million, which is above the $75,000 threshold. However, several of the defendants appear to be Missouri citizens, just like plaintiff. Since he has not shown that his citizenship is different from that of each defendant, plaintiff has not carried his burden of establishing diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Plaintiff also asserts that there is federal question jurisdiction. Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182,

5

1188 (8th Cir. 2015). Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). *See also Northwest South Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986) (stating that "[a] non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction"). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

In the section of the form complaint for asserting federal question jurisdiction, plaintiff broadly references an executive order, Missouri squatter's rights, maritime laws, admiralty laws, aboriginal rights to land, and "civil laws regarding [his] civil right[s]."

With regard to the executive order, plaintiff does not identify the specific order to which he is referring, does not demonstrate how it applies to him, and does not show that the order provides a private right of action. As such, this vague mention fails to provide a basis for federal question jurisdiction. *See Kuhl v. Hampton*, 451 F.2d 340, 342 (8th Cir. 1971) (explaining that executive order relied upon by plaintiff did "not give a private legal right of action"); and *Meisch v. U.S. Army*, 435 F.Supp. 341, 343 (E.D. Mo. Aug. 16, 1977) (stating that executive order at issue did "not create a private right of action through which plaintiff could obtain federal question jurisdiction").

As to plaintiff's alleged squatter's rights, the Court notes that the State of Missouri recognizes the doctrine of adverse possession. "To establish title to a piece of land through adverse possession, a claimant must prove, by a preponderance of the evidence, his or her possession of the land was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4)

6

exclusive; and (5) continuous for a period of ten years." *White v. Matthews*, 506 S.W.3d 382, 388 (Mo. App. E.D. 2016). This is a state law formulation, however, and has nothing to do with any federal law, federal treaty, or constitutional provision. Therefore, this also does not provide a basis for federal question jurisdiction.

Next, plaintiff's reliance on admiralty law and maritime law are misplaced, as nothing in this case indicates that maritime activity is involved in his claim. *See Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (explaining that "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity"); and *Three Buoys Houseboat Vacations U.S.A. Ltd. V. Morts*, 921 F.2d 775, 777 (8th Cir. 1990) ("Admiralty jurisdiction as to torts requires locality (the situs of the waterway) and nexus (the status of the vessel or activities)…Locality is satisfied by a navigable waterway, while nexus is satisfied by a sufficient relationship of the vessel to maritime activities").

Finally, plaintiff's argument that the Court has jurisdiction based on his Native American and Moorish American aboriginal rights is without any basis in law, and does not implicate a federal statute, treaty, or constitutional right. *See Draper v. Round Hill Pacific Management LLC*, 2020 WL 1677148, at *2 (D. Neb. 2020) (dismissing plaintiff's complaint for lack of subject-matter jurisdiction because her "allegations that she was wrongfully evicted from her rental property for failure to pay rent because she was entitled to live rent-free as a "Moorish American" fails to establish that this court has jurisdiction").

As explained above, plaintiff cannot rely on an unidentified executive order, state law, admiralty law, or his rights as a Native or Moorish American to provide federal question jurisdiction. However, plaintiff also asserts a violation of his civil rights, which appears to be an

attempt to bring a claim under 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013). A claim brought pursuant to 42 U.S.C. § 1983 "arises under federal law and will support federal-question jurisdiction pursuant to § 1331." *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). Therefore, the Court will construe plaintiff's complaint as being filed under § 1983, and will analyze it accordingly.

### B.  Claims Against Non-State Actors

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). To that end, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or

its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Here, defendants Copeland, Lutovich, Yalima Holdings LLC, and Solid Real Estate Group LLC are private parties. None are alleged to "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *See West v. Atkins*, 487 U.S. 42, 49 (1988). Furthermore, none are alleged to have participated in a joint activity with the state or come to a "meeting of the minds" with state actors. In point of fact, none of these defendants are actually named in the "Statement of Claim." At best, plaintiff has shown that the "landowner" called the police for help when plaintiff refused to leave the landowner's property. Plaintiff does not identify which – if any – of the defendants is the landowner in question, but even if he did, there are not sufficient facts to establish that simply seeking assistance from law enforcement is enough to transform a private actor into a state actor. Because plaintiff has not establish an essential element under 42 U.S.C. § 1983, the claims against Copeland, Lutovich, Yalima Holdings LLC, and Solid Real Estate Group LLC must be dismissed.

Even if these defendants *were* state actors, plaintiff has failed to state a claim against them. Liability in a § 1983 claim "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and

any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not alleged facts connecting Copeland, Lutovich, Yalima Holdings LLC, or Solid Real Estate Group LLC to the challenged action. To the contrary, plaintiff has not mentioned these defendants whatsoever in the "Statement of Claim." For this reason as well, the claims against these defendants must be dismissed.

### C. Claim Against St. Louis County Police Department

Plaintiff has named the St. Louis County Police Department as a defendant, contending that members of the department removed him and his family from property upon which he was squatting. The St. Louis County Police Department, however, is a department of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). Since it is not a suable entity, the claim against the St. Louis County Police Department must be dismissed.

### D. St. Louis County Government

A local governing body such as St. Louis County can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). However, a municipality cannot be held liable merely because it employs a tortfeasor. *A.H. v. City of St. Louis, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality...cannot

10

be liable on a respondeat superior theory"). Rather, to prevail on this type of claim, the plaintiff

must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha,*

*Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation

"resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately

indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See*

*also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an

unconstitutional policy or custom, or those based on a theory of inadequate training, which is an

extension of the same"). Thus, there are three ways in which plaintiff can prove the liability of St.

Louis County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to

"official policy, a deliberate choice of a guiding principle or procedure made by the municipal

official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829

F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no

other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*,

486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is

asserted that a municipality should have done more to prevent constitutional violations by its

employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the

inadequacies were a product of deliberate or conscious choice by the policymakers."  *Id.* at 390.

"A policy may be either a policy statement, ordinance, regulation, or decision officially adopted

and promulgated by the municipality's governing body." *Angarita v. St. Louis Cty.*, 981 F.2d 1537,

1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom."

In order to do so, plaintiff must demonstrate:

11

1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (explaining that inadequate training may serve as the basis for 42 U.S.C. § 1983 liability only when "the failure to train amounts to deliberate indifference"). To show deliberate indifference, a plaintiff must prove that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *See Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Ordinarily, this is done by a plaintiff alleging a "pattern of similar constitutional violations by untrained employees." *See S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *See Crumpley-Patterson*, 388 F.3d at 591. However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). In this case, plaintiff has not presented facts supporting the proposition that his constitutional rights were violated due to a St. Louis County policy, custom, or failure to train.

With regard to policy, plaintiff does not point to any St. Louis County "policy statement, ordinance, regulation" or officially-adopted decision as being at issue or causing him harm. Certainly, he does not allege facts showing that his rights were violated by "a deliberate choice of a guiding principle or procedure made by" a St. Louis County official "who has final authority regarding such matters." That is, he does not show that St. Louis County has an official policy of utilizing the county police force to unconstitutionally remove people from their property. Rather, his "Statement of Claim" recounts a single occurrence that happened to him, which is not sufficient. *See Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991) (explaining that a court cannot infer the existence of an unconstitutional policy or custom from a single occurrence).

As to an unconstitutional custom, plaintiff has failed to establish the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by" St. Louis County employees, much less that St. Louis County officials were deliberately indifferent to or tacitly authorized such misconduct. Instead of a pattern, plaintiff has provided only a single, vaguely-described incident in his complaint. As noted above, that is not sufficient for the Court to infer the existence of an unconstitutional policy or custom.

Likewise, with regard to a failure to train, plaintiff has not put forth facts alleging that St. Louis County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Such notice is typically provide by demonstrating a "pattern of similar constitutional violations by untrained employees." Plaintiff has not demonstrated a "pattern," but only provided broadly-worded and imprecise facts regarding a single incident on April 26, 2021. A single incident does not comprise a pattern.

Finally, to the extent that plaintiff attempts to hold St. Louis County liable for the actions of its employees, the Court notes that respondeat superior is not available in a municipal liability claim under 42 U.S.C. § 1983.

For all these reasons, plaintiff has failed to demonstrate the liability of St. Louis County. Therefore, the claim against it must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### E.  Failure to State a Claim

Even if the Court had not analyzed plaintiff's complaint under 42 U.S.C. § 1983, this action would still be subject to dismissal as plaintiff has not stated a claim that is sufficient to survive initial screening under 28 U.S.C. § 1915(e).

To state a claim, plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. A court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). However, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

Liberally construed, plaintiff's contention in his "Statement of Claim" is that he was wrongfully removed from property that belonged to him under the doctrine of adverse possession.

14

He also complains that during this removal process, the police department had their guns drawn. These facts are insufficient to plausibly establish that the St. Louis County Police Department or any other defendant engaged in misconduct. In particular, plaintiff does not support his legal conclusion that he adversely possessed the property in question. That is, he has not presented any facts showing that his possession of the land was: (1) hostile and under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous for a period of ten years." *See White*, 506 S.W.3d at 388. To the contrary, plaintiff undercuts his claim to ownership by alluding to his "rights" as a squatter,[2] and by repeatedly referring to the "landowner" of the property, implying that plaintiff did not, in fact, own the property he possessed.

Concerning the behavior of the police, plaintiff states only that they had their guns "drawn." He does not, however, provide any supplementary facts demonstrating that the drawing of the officers' weapons was wrongful in and of itself. For instance, plaintiff does not claim that he complied or cooperated with police directives, or that the drawing of weapons was otherwise unnecessary. Rather, he admits that the police had to cut the locks to regain possession of the property. Plaintiff also does not allege that any weapons were pointed at him, or that any threats were made. Plaintiff's conclusory allegations, without any accompanying support, do not contain sufficient "factual content that allows the court to draw the reasonable inference that [defendants are] liable for the misconduct alleged." *See Ashcroft*, 556 U.S. at 678

Furthermore, plaintiff's complaint does not comport with the Federal Rules of Civil Procedure. "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d

---

[2] According to Black's Law Dictionary, a squatter is "[a] person who settles on property without any legal claim or title."

843, 848 (8th Cir. 2014). The reviewing court looks at the well-pleaded facts in the complaint to determine whether the pleading party has provided the necessary notice, thus stating a claim in the manner contemplated by the Federal Rules. *Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1057-58 (8th Cir. 2002). Meanwhile, according to Rule 8, "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

While plaintiff's statement is short, it does not – as discussed above – show that plaintiff is entitled to relief. Additionally, the "Statement of Claim" is not adequate to put each defendant on notice as to what it did or did not do to harm plaintiff. Therefore, for all the reasons discussed above, plaintiff's complaint is subject to dismissal for failure to state a claim.

### F. Plaintiffs Cotton and M.Y.

Alongside Bernard Hooks, two other individuals – Maggie Cotton and M.Y. – are listed as plaintiffs in the case caption. As noted above, however, only Mr. Hooks has signed the complaint and the motion for leave to proceed in forma pauperis. Rule 11 of the Federal Rules of Civil Procedure requires each pro se party to personally sign the complaint. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented"). Because Ms. Cotton and M.Y. did not comply with Rule 11, they will be stricken from this action.

### G. Claims on Behalf of Others

As just discussed, the instant complaint lists three separate plaintiffs: Hooks, Cotton, and M.Y., who seems to be the minor child referenced in the "Statement of Claim." Mr. Hooks has been treated as the sole plaintiff as he is the only one to sign the complaint and the motion for

16

leave to proceed in forma pauperis. Indeed, the manner in which the complaint is written indicates that plaintiff is actually attempting to litigate the claims on behalf of Cotton and M.Y.

To the extent that plaintiff is attempting to bring claims on behalf of others, those claims must be dismissed. There is no indication that plaintiff is a licensed attorney, and a non-attorney pro se litigant may not represent someone else in federal court. *See*  28 U.S.C. § 1654 (stating that in all United States courts, "the parties may plead and conduct their own cases personally or by counsel"); *Iannaccone v. Law*, 142 F.3d 553, 558 (2nd Cir. 1998) (stating that "because pro se means to appear for one's self, a person may not appear on another's behalf in the other's cause…A person must be litigating an interest personal to him"); and *Lewis v. Lenc–Smith Mfg. Co*., 784 F.2d 829, 830 (7th Cir. 1986) (stating that a person who is not licensed to practice law may not represent another individual in federal court). The Court also adds that a non-attorney self-represented litigant cannot represent his or her minor child in federal court. *See Crozier for A.C. v. Westside Community School District*, 973 F.3d 882, 887 (8th Cir. 2020) ("Non-attorney parents cannot litigate pro se on behalf of their minor children, even if the minors cannot then bring the claim themselves").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs Maggie Cotton and M.Y. are **STRICKEN** from this action.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 22nd day of September, 2021.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE